NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0624n.06

No. 13-1865

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 13, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SAMMY KIPRUTO MAIYO, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

_____

BEFORE: BOGGS, COLE, and STRANCH, Circuit Judges.

BOGGS, Circuit Judge: Sammy Maiyo, a Kenyan national, appeals the district court's denial of his motion to set aside his conviction based on alleged ineffective assistance of counsel. At the time he filed the motion, Maiyo had already served his sentence and the district court correctly construed his motion as a motion for a writ of coram nobis. For the reasons given below, we affirm the district court's denial of Maiyo's motion.

I

Maiyo came to the United States in 2005 in order to attend college under an F-1 student visa, which prohibited employment. In 2008, in order to support himself while attending school, Maiyo paid $100 to an acquaintance to obtain a false Social Security card. Using the false Social Security card, he gained employment at two different companies where he worked until the time of his arrest. Later in 2008, the United States Citizenship and Immigration Service (USCIS)

1

investigated Maiyo and confirmed that he was working for these companies without authorization, having presented false documents.

In February 2010, a grand jury returned a three-count indictment, charging Maiyo with two counts of falsely claiming United States citizenship with the intent to engage in unlawful employment, in violation of 18 U.S.C. § 1015(e), and one count of possession of a falsely made Social Security card, in violation of 18 U.S.C. § 1546(a). A warrant was issued for his arrest in February 2010 and was executed in December 2010 during a traffic stop.

In January 2011, Maiyo pleaded guilty to the third count of the indictment pursuant to a plea agreement in which the government agreed to dismiss the first two counts and not to oppose a reduction for assistance in return for Maiyo's limited waiver of his right to appeal or seek collateral review of his sentence. In May 2011, the court sentenced Maiyo to one year of probation.

On June 4, 2012, Maiyo filed a motion to vacate and set aside judgment under 28 U.S.C. § 2255 (federal habeas) or, in the alternative, 28 U.S.C. § 1651 (the All Writs Act).[1] Even though his sentence had already been served, Maiyo sought to vacate the court's judgment so as to obviate the sentence's potential secondary consequence of deportation. Maiyo's motion to vacate rested on a theory of ineffective assistance of counsel based upon his lawyer's allegedly incorrect advice regarding the consequences of a guilty plea to his immigration status. Specifically, Maiyo claimed that his lawyer incorrectly advised him that deportation was merely a "possibility" following his conviction, rather than, as he claimed in his motion to vacate, being "virtually assured." Maiyo argued that, had he known the true consequences of a guilty plea, he

---

[1] Maiyo styled his motion for post-conviction relief under alternative provisions because, at the time of his motion, though his one year of probation should have ended, he was not yet formally discharged from probation and it was unclear as to whether Maiyo was at that time still in custody.

2

"would not have signed the plea agreement . . . and he would not have pled guilty to the offense."

The district court denied Maiyo's motion, finding that his lawyer's performance was not deficient and that it did not cause him prejudice, failing both parts of the two-part test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Maiyo timely appealed the district court's decision.

II

We review the legal conclusions underlying the district court's denial of Maiyo's motion for coram nobis de novo while reviewing the court's findings of fact for clear error. *See United States v. Johnson*, 237 F.3d 751, 755 (6th Cir. 2001).

Federal prisoners may challenge the legality of their confinement by petitioning for a writ of habeas corpus under 28 U.S.C. § 2255. But what about convicts like Maiyo who have already served their sentences and are no longer "in custody" as required by § 2255(a)? The writ of coram nobis, abolished at civil law by Fed. R. Civ. P. 60(e), still exists as a remedy at criminal law for convicts who wish to challenge the legality of already-served sentences. *See United States v. Morgan*, 346 U.S. 502, 510–11 (1954). Authorized by the All Writs Act, 28 U.S.C. § 1651, coram nobis has its roots as a common-law remedy for the correction of a court's errors of fact, but now enjoys a broader application as a mechanism to redress convictions based on any type of trial error, provided it is "of the most fundamental character." *Morgan*, 346 U.S. at 512. It exists as a remedy because, as in this case, "[a]lthough the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected." *Id.* at 512–13. Because the finality of a district court's judgment is not to be

3

disturbed lightly, the issuance of a writ of coram nobis is an "extraordinary remedy" available "only under circumstances compelling such action to achieve justice." *Id*. at 511.

III

Maiyo seeks a writ of coram nobis based on what he claims was ineffective assistance of counsel. The allegedly deficient performance boils down to the fact that his attorney informed him that deportation was only a "possibility" following his guilty plea. Maiyo contends that the crime to which he entered a guilty plea, knowing possession of a falsely made Social Security Account number card in violation of 18 U.S.C. § 1546, is a "deportable" offense under 8 U.S.C. 1227(a)(3)(B)(iii) and therefore his deportation is not merely a "possibility," but was in fact much more certain.[2] He claims that had he known the true likelihood of his deportation following his guilty plea, he would have demanded a trial.

The Sixth Amendment guarantees effective assistance of counsel in criminal proceedings, and failure of trial counsel to properly represent his client can render a conviction unconstitutional. In order to demonstrate ineffective assistance of counsel, Maiyo must show both that his attorney's performance was deficient and that the deficiency caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a "strong presumption" that an attorney "render[s] adequate assistance and [makes] all significant decisions in the exercise of reasonable professional judgment." *Id*. at 689–90. In order to demonstrate deficiency, Maiyo "must show that his attorney's performance fell below an objective standard of reasonableness." *O'Neal v. Bagley*, 743 F.3d 1010, 1019 (6th Cir. 2013). In order to demonstrate prejudice, Maiyo must show "a reasonable probability" that "but for such conduct the outcome of the

---

[2] Maiyo seems to have backed off the position he originally took in his motion to vacate that deportation was "virtually assured."

proceedings would have been different." *Williams v. Anderson*, 460 F.3d 789, 800 (6th Cir. 2006).

Further, the Supreme Court held in *Padilla v. Kentucky* that ineffective-assistance-of-counsel claims can extend to an attorney's sufficiently poor advice regarding the immigration consequences of criminal pleas. 559 U.S. 356, 374 (2010). The Court held that in order to render constitutionally sufficient legal advice to an alien facing criminal charges, "counsel must inform her client whether his plea carries a risk of deportation." *Id*. at 374. In *Padilla*, an attorney's erroneous advice "not to worry" about deportation following a guilty plea was held to have been below *Strickland*'s objective standard of reasonableness and constituted ineffective assistance of counsel. *Ibid*.

Under the *Strickland* test, as informed by *Padilla*, Maiyo's attorney did not provide ineffective assistance at trial.

The advice Maiyo's attorney provided was not deficient. Nothing his attorney said or did not say ran afoul of the requirement of *Padilla* that an attorney advise a client "whether his plea carries a *risk* of deportation." *Padilla*, 559 U.S. at 374 (emphasis added). Maiyo's counsel did just that. She informed Maiyo that he could be deported as a result of a guilty plea. The very colloquy cited in Mayio's brief and in his underlying motion to vacate demonstrates that he was on notice that "his plea carrie[d] a risk of deportation."

> THE COURT: Do you understand, sir, that this conviction will be a felony offense and will subject you to deportation from the United States. Do you understand that?
>
> THE DEFENDANT: Yes, your Honor. [Mr. Maiyo testifies he looked to his counsel]
>
> THE COURT: Is that a certainty, Mr. Salan, or not?
>
> MR. SALAN: Actually, in Mr. Maiyo's case, it may well not be for two reasons; number

one, because either [he] has been or is about to be married to a U.S. citizen.[3]

MS. GIRARD: He is already.[4]

MR. SALAN: Number one. And number two, given the status of what is going on in Kenya, he may well qualify for asylum or withholding of removal. From my understanding, it's not a healthy place for humans and other living things.

THE COURT: At this point, deportation is only a possibility rather than a certainty?

MR. SALAN: It's a possibility, yes.

THE COURT: Mr. Maiyo, do you understand that deportation is a possibility in your case if you are convicted of this offense. Do you understand that?

THE DEFENDANT: Yes, your Honor.

In other words, in addition to his own lawyer, the Judge and the prosecutor both informed Maiyo that he faced the possibility of deportation. Maiyo's attorney told him of the risk of deportation; she did not render advice that was "below an objective standard of reasonableness." *O'Neal*, 743 F.3d at 1019. Accordingly, Maiyo fails to demonstrate ineffective assistance of counsel at the first step of *Strickland*.

In addition to failing to demonstrate deficient representation, Maiyo also fails to demonstrate prejudice. In order to show prejudice in a case where the defendant took a plea agreement, he must show that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This is an objective, not a subjective, test: the bare recitation of the fact that you would have gone to trial had you received different advice is not enough. "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.

---

[3] Mr. Salan was the Assistant United States Attorney prosecuting Maiyo's case.
[4] Ms. Girard was Maiyo's attorney.

No rational defendant in Maiyo's position would have made the choice to go to trial. As the trial court pointed out, conviction would have been a foregone conclusion. The evidence against him was irrefutable. Maiyo made false statements regarding his citizenship in writing to his employers which were kept on record. Similarly, he obtained a fraudulent Social Security card and submitted it to his employers. Maiyo may claim now that he "would have taken his chances at trial" because of his fears of returning to Kenya. Appellant's Br. at 19. But for him to have actually taken those chances would have been wholly irrational. The first two counts for making false statements, which were dismissed pursuant to the plea agreement, were far more serious charges than the one for which he was convicted. Had Maiyo elected to go to trial, his inevitable conviction would not only have greatly enhanced the likelihood of deportation but would also probably have resulted in a prison sentence.

Going to trial would have been even more irrational in light of the agreement that Maiyo's attorney appeared to have negotiated with the Immigration and Customs Enforcement (ICE) officer assigned to his case. The ICE agent agreed to "recommend that Mr. Maiyo not be deported" in exchange for Maiyo's cooperation in his prosecution. Clearly, if Maiyo wanted to avoid deportation, accepting the plea agreement was an objectively rational way to achieve that end. Maiyo was not prejudiced by the performance of his attorney.

Because Maiyo has not shown ineffective assistance of counsel under *Strickland*, he cannot demonstrate entitlement to the extraordinary remedy of coram nobis.

IV

For the reasons above, we AFFIRM the district court's denial of Maiyo's petition for a writ of coram nobis.

7